# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## 11-1142

**STATE OF LOUISIANA**

**VERSUS**

**A.D.L.**

**********

APPEAL FROM THE
TWENTY-SEVENTH JUDICIAL DISTRICT COURT
PARISH OF ST. LANDRY, NO. 07K6617D
HONORABLE ALONZO HARRIS, DISTRICT JUDGE

**********

**JOHN D. SAUNDERS**
**JUDGE**

**********

Court composed of John D. Saunders, Marc T. Amy, and Billy Howard Ezell, Judges.

**AFFIRMED.**

 **Earl B. Taylor**
**27th JDC District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
    **State of Louisiana**

**Annette Fuller Roach**
**Louisiana Appellate Project**
**P. O. Box 1747**
**Lake Charles, LA 70602-1747**
**(337) 436-2900**
**COUNSEL FOR DEFENDANT APPELLANT:**
**A.D.L.**

**Jennifer Ardoin**
**Assistant District Attorney**
**P. O. Drawer 1968**
**Opelousas, LA 70571**
**(337) 948-0551**
**COUNSEL FOR APPELLEE:**
**State of Louisiana**

**SAUNDERS, Judge.**

Following a judge trial, Defendant was convicted of one count of indecent behavior with a juvenile, a violation of La.R.S. 14:81. He was sentenced to five years' imprisonment. Defendant appealed the conviction and sentence. While this court conditionally affirmed the conviction and sentence, it remanded the matter to the trial court to conduct an evidentiary hearing on the question of whether Defendant validly waived his right to a jury trial. This court further instructed the trial court that if a valid waiver was not made, the conviction and sentence must be set aside and a new trial granted. Defendant's right to appeal any adverse ruling was reserved. *State v. A.D.L.,* 10-1218 (La.App. 3 Cir. 5/11/11), 64 So.3d 448.

An evidentiary hearing was held on August 24, 2011. Thereafter, the hearing judge ruled that Defendant knowingly and intelligently waived his right to a jury trial.

Defendant now appeals the hearing judge's ruling. He asserts that the hearing judge erred when he required Defendant's trial counsel to testify at the hearing without a valid waiver of the attorney-client privilege and when the hearing judge found that Defendant made a knowing and voluntary waiver of his right to a jury trial. For the following reasons, we affirm the hearing judge's ruling that Defendant validly waived his right to a jury trial.

**FACTS:**

The facts of this case are found in Defendant's first appeal. *State v. A.D.L.*, 64 So.3d 448.

**ASSIGNMENTS OF ERROR:**

Initially, Defendant argues that his constitutional right to invoke the attorney-client privilege was violated when the hearing judge required trial counsel,

Attorney Edward Lopez, to testify regarding the issue of whether Defendant intelligently and knowingly waived the right to a jury trial.

> Although the right to a jury trial may be waived in non-capital cases, it must be "knowingly and intelligently" waived. LSA-C.Cr.P. art. 780A. Waiver of this right is never presumed. *State v. McCarroll*, 337 So.2d 475, 480 (La.1976); *State v. Zeringue*, 03-697 (La.App. 5 Cir. 11/25/03), 862 So.2d 186, 193, *writ denied*, 03-3523 (La.4/23/04), 870 So.2d 298. Although it remains the preferred method for the district court to advise a defendant of the right to a jury trial in open court before obtaining a waiver, that practice is not statutorily required. *State v. Pierre*, 02-2665 (La.3/28/03), 842 So.2d 321 (*per curiam*); *State v. Lokey,* 04-616 (La.App. 5 Cir. 11/30/04), 889 So.2d 1151, 1154, *writ denied*, 04-3195 (La.5/6/05), 901 So.2d 1093. It is likewise preferred, but not necessary, for the defendant to waive the right to a jury trial personally. *Id.* Counsel may waive the right on the defendant's behalf, provided the defendant's decision to do so was made knowingly and intelligently. *Id.*

*State v. Howard*, 10-869, pp. 6-7 (La.App. 5 Cir. 5/24/11), 66 So.3d 1160, 1165.

On May 18, 2011, the State filed a "Motion for La.Code Evid. Art. 507 hearing to Establish Validity of State's Subpoenas," wherein it sought to establish the validity of the subpoenas issued to Judge Donald Hebert, who was the trier of fact at Defendant's trial, and to trial counsel, Attorney Edward Lopez. A hearing was scheduled for July 21, 2011. On May 11, 2011, Judge Hebert, in a PER CURIAM, recused himself for the purpose of the evidentiary hearing, and on June 15, 2011, Attorney Lopez moved to withdraw as counsel of record, which was granted by Judge Alonzo Harris. On July 21, 2011, Attorney David Balfour enrolled as Defendant's counsel for the purpose of the evidentiary hearing only.

At the evidentiary hearing, Attorney Balfour stated that Defendant would not testify as to whether he had waived his right to a jury trial nor was he waiving his attorney-client privilege. Attorney Balfour appeared to argue that the evidentiary hearing should address only the question of whether there was a waiver, not whether it was intelligently or knowingly made. Accordingly, if there was nothing in the record to establish that Defendant waived the right, he would be entitled to

2

have the conviction set aside and, therefore, La.Code Evid. art. 507 was not applicable. Defendant's appellate counsel agrees.

In a memorandum filed on August 22, 2011, citing *State v. Dominguez*, 10-1868 (La.App. 1 Cir. 12/8/10), 52 So.3d 1117, *writ denied*, 10-2781 (La. 1/28/11), 56 So.3d 956, the State argued that the question of attorney-client privilege was not an issue in the case of whether Defendant validly waived the jury trial. In *Dominguez,* during pretrial proceedings, defense counsel advised the trial court that the defendant waived a jury trial. After the defendant was found guilty, he filed a motion to arrest judgment and claimed that he did not knowingly and intelligently waive his right to a jury trial. When the State attempted to call his attorney to testify regarding his decision to waive jury trial, the defendant then raised the attorney-client privilege. The first circuit stated:

> When the record does not clearly indicate a valid waiver of the right to a jury trial, the recent trend has not been to reverse but to remand the case to the trial court for an evidentiary hearing on the issue of whether a valid jury waiver was obtained. *See State v. Nanlal*, 97-0786 (La.9/26/97), 701 So.2d 963. In *State v. Cappel,* 525 So.2d 335, 337 n. 3 (La.App. 1st Cir.), *writ denied*, 531 So.2d 468 (La.1988), this Court noted that when the record is insufficient to determine whether the defendant knowingly and intelligently waived his right to a jury trial, the testimony by defendant and defense counsel at an evidentiary hearing would certainly be relevant, if not dispositive of the issue. We conclude that defense counsel's testimony regarding the decision to waive the right to a jury trial is not barred by the attorney-client privilege because relator anticipatorily waived the privilege by alleging in his motion in arrest of judgment that his election of a bench trial was not knowingly and intelligently made.

> The Louisiana Supreme Court adopted the "anticipatory waiver theory" in *Smith v. Kavanaugh, Pierson & Talley*, 513 So.2d 1138 (La.1987). Under the anticipatory waiver theory of the attorney-client privilege, the court must concern itself solely with whether the privilege holder has committed himself to a course of action that will require the disclosure of a privileged communication.

> In *Smith*, the plaintiff filed a legal malpractice action, and the Supreme Court was faced with the issue of whether the plaintiff had waived her attorney-client privilege regarding communications with her present attorney by pleading contra non-valentum or by testifying

in her deposition about those communications. The Supreme Court determined that a waiver of the attorney-client privilege could occur under certain circumstances when certain pleadings are filed:

> Furthermore, by electing or committing himself to introduce his attorney-client communications at trial and thereby waiving his privilege to such communications, a party creates a special unfairness to his adversary which qualifies as an extraordinary circumstance warranting a court order that his attorney submit to a deposition by his adversary as to these communications.

513 So.2d at 1141. Because the plaintiff in *Smith* testified in her deposition that her current attorney had told her for the first time that the defendants had maladministered her husband's succession, the Court concluded the plaintiff had indicated an intention to use the disclosed communication with her attorney at the trial of the exception of prescription to explain her failure to file suit within the prescriptive period. Under these circumstances, "her deposition testimony may constitute a pretrial partial disclosure of a privileged communication amounting to a waiver of her privilege as to relevant communications with her attorney on the same subject." 513 So.2d at 1146.

> In the instant case, relator and his counsel presumably discussed the consequences of waiving a trial by jury, since counsel notified the court well before trial that the defendant intended to waive his right to a jury trial. That conversation contains evidence that the court can use to evaluate whether relator knowingly and intelligently waived his right to a jury trial. By claiming his waiver was invalid, relator has committed himself to a course of action that requires disclosure of conversations he had with counsel about the waiver issue; such disclosure is not barred by the attorney-client privilege.

*Id.* at 1119-20 (footnote omitted).

In the current case, in brief, Defendant encourages this court to decline to follow *Dominguez* and points to *State v. James*, 99-1047 (La.App. 5 Cir. 1/25/00), 751 So.2d 419 (*James II*), which Defendant "suggests that specific inquiry of the trial attorney would be improper" in the case of determining whether the defendant had waived his right to a jury trial. Our reading of *James II* is that the fifth circuit did not suggest a trial counsel's testimony regarding whether a client validly waived his right to a jury trial was a breach of the attorney-client privilege. *State v. James*, 94-720 (La.App. 5 Cir. 5/30/95), 656 So.2d 746 (*James I*), was very similar

4

to the current case. There, the defendant was tried by the trial court and found guilty of the charged offenses. However, there was nothing in the record to indicate that he waived his right to a jury trial. On appeal, the fifth circuit remanded for an evidentiary hearing, stating:

> The record, as it now stands, does not show that James executed a jury waiver; however, James was represented by able counsel at trial and the record does not contain any defense objection because the charges were being tried by a judge not a jury. These were serious felony charges.
>
> Nonetheless, if a defendant is tried and convicted by a judge when clearly entitled to a jury, the record must show that a jury was knowingly and intelligently waived. A legal waiver cannot be presumed, no matter how strong presumption evidence may be. Here, the state argues that James effectively waived a jury at a pretrial proceeding.
>
> This Court has authority under *State v. Williams*, 404 So.2d 954 (La.1981), and other cases to reverse the convictions and remand for a new trial. This Court also has authority, under *State v. Cappel*, 525 So.2d 335 (La.App. 1 Cir.1988), *writ denied* at 531 So.2d 468 (La.1988), and other cases to remand for an evidentiary hearing regarding the jury waiver. Under the present circumstances, wherein James had competent counsel and was tried without objection by a judge, we believe that the interests of justice are better served by a remand instead of reversals [sic].
>
> Accordingly, we remand for an evidentiary hearing to determine whether James knowingly and intelligently waived his right to a jury trial. If the evidence shows that James did not execute such a waiver, the district judge is instructed to set aside the convictions and grant a new trial. If the waiver was properly made, the appeal should be transferred back to this Court for review of this determination and for review of several errors patent concerning the sentences.

*Id.* at 746-47 (footnotes omitted).

On remand, the trial court in *James I* found that there was sufficient evidence to find that the defendant had made a valid waiver of a jury trial. When the case came back on appeal, asserting that the trial court erred, the fifth circuit agreed, stating:

> On remand, the State concedes that the original appellate record is devoid of a waiver by the defendant of his right to trial by jury. At

5

the evidentiary hearing, the State introduced the transcript of the defendant's arraignment, wherein the trial judge (not the one who presided at the bench trial) advised the defendant of his right to a trial by jury and his right to waive a jury trial. This transcript does not contain a response by the defendant to the judge's recitation of his rights. The State also called Walter Amstutz, defendant's former counsel who now works for the District Attorney's Office as a prosecutor, to testify regarding his representation of defendant. James himself did not testify on remand.

On appeal, James argues that the arraignment transcript does not establish an affirmative, knowing waiver of his right to a jury trial. He argues that although the judge advised him of his right to a jury trial at his arraignment, he made no response or other indication, such as through counsel, that he understood and waived his right to a jury trial. He also argues that Amstutz's testimony at the evidentiary hearing presents a conflict of interest, since Amstutz represented him at the arraignment through the Indigent Defender Board but now works for the Jefferson Parish District Attorney's Office, the body who is prosecuting him.

. . . .

The insufficiency of the arraignment transcript highlights the importance of the next assignment of error. Defendant next argue[s] that allowing his former counsel to testify at the evidentiary hearing was an impermissible conflict of interest because he now works for the District Attorney's office. Further, defendant argues that his former attorney's testimony violates attorney/client privilege, since James does not allege ineffective assistance of counsel.

This court, on original appeal, cited *State v. Cappel,* 525 So.2d 335 (La.App. 1 Cir.1988) as authority for remanding the case for an evidentiary hearing. The court in *State v. Cappel* specifically stated that, at such hearing, testimony by the defendant and his defense counsel would be relevant, if not dispositive, whether the defendant knowingly and intelligently waived his right to a jury trial. However, *Cappel* did not address the specific issue here, whether testimony by the attorney would waive the attorney-client privilege, or the conflict of interest presented by Mr. Amstutz's new employment.

Mr. Amstutz testified that he was a contract attorney with the Parish of Jefferson's Indigent Defender Board from approximately November, 1991, until sometime in 1997. He testified that his general procedure with all clients was to advise them of their rights, including their right to a jury trial and that they could waive that right. Amstutz testified that he remembered Mr. James, although he did not have access to his IDB files on this case. At this point there was an objection by defense counsel. In a side bar, the court stated that since the defendant raised the issue as to whether or not he was properly

6

advised of his constitutional right to trial by jury, he had waived any attorney/client privilege with respect to that particular issue.

Mr. Amstutz testified that he always advised his clients of this right, and that it was his understanding that the defendant, not counsel, was the one who must make the decision to whether or not to waive trial by jury. He said that he was not singling out any of his former cases. He testified that if a bench trial took place, then the defendant must have waived trial by jury, and that the record spoke for itself.

As we stated above, a waiver of a jury trial is never presumed. The evidence adduced at the evidentiary hearing shows no affirmative waiver of this right by the defendant. His former defense counsel *presumed* that James must have waived his right to trial, since a bench trial took place, and said that the record "speaks for itself." But it is this presumption that the law does not allow. The evidence, at best, shows that Amstutz probably advised the defendant of his right to trial by jury. The evidence does not show that James waived this right, either knowingly, intentionally, or otherwise. Therefore, James's conviction must be reversed, and the matter remanded for a new trial.

We do not find that Amstutz's testimony breached attorney/client privilege. The fact, by itself, that Amstutz testified, did not breach the attorney/client privilege. While he testified that he did recall a conversation with this defendant, Amstutz kept the scope of his testimony to his general practice in all of his cases, specifically saying that he was not singling out any one case. He did not testify to the substance of any specific conversation with the defendant.

*James II*, 751 So.2d at 420-21, 422-23.

Our reading of *James II* is that the fifth circuit found only that there was no breach of the attorney-client privilege because the trial counsel did not testify to any specifics of James' case and not that, if he had, it would have been improper.

In the current case, Defendant essentially argues that he did not raise the issue of whether he validly waived his right to a trial by jury and he did not waive the attorney-client privilege. He argues the only issue is whether there was an actual waiver, not whether the waiver was intelligent or knowing; therefore, it was error to have compelled trial counsel to testify. He states that "[i]f in fact a valid waiver had been made, the State could have proven this by other means, such as producing a transcript of another hearing where a waiver was made or calling

7

others present when the waiver was alleged to have been made at docket sounding to determine what was said and whether Appellant was present at this stage."

In the current case, the issue before this court was whether the waiver was knowingly and intelligently made. This court already established that the record did not memorialize the waiver, as we required the district court clerk's office to produce any minute entry and/or the pertinent portion of any transcript concerning a discussion of Defendant's waiver of jury trial—of which there was none. It would have been irrational for this court to have remanded the matter to determine if there were transcripts or minute entries regarding the waiver when it had already made that determination. Therefore, as Defendant points out, the resolution would be to call "others present when the waiver was alleged to have been made at docket sounding to determine what was said and whether Appellant was present at this stage." The only others in this case would be the attorney, the judge, and Defendant himself.

As noted in *James II*, in *Cappel*, 525 So.2d 335, although the issue of the attorney-client privilege was not before the court while deciding if there was adequate evidence of a valid waiver of a jury trial, in a footnote, the court stated "[a]t such hearing, testimony by defendant and defense counsel would certainly be relevant, if not dispositive of the issue." *Id*. at 337, n. 3.

Louisiana Code of Evidence Article 507, in pertinent part, provides:

> **A. General rule**. Neither a subpoena nor a court order shall be issued to a lawyer or his representative to appear or testify in any criminal investigation or proceeding where the purpose of the subpoena or order is to ask the lawyer or his representative to reveal information about a client or former client obtained in the course of representing the client unless the court after a contradictory hearing has determined that the information sought is not protected from disclosure by any applicable privilege or work product rule; and all of the following:

8

(1) The information sought is essential to the successful completion of an ongoing investigation, prosecution, or defense.

(2) The purpose of seeking the information is not to harass to the attorney or his client.

(3) With respect to a subpoena, the subpoena lists the information sought with particularity, is reasonably limited as to subject matter and period of time, and gives timely notice.

(4) There is no practicable alternative means of obtaining the information.

We find that considering the above jurisprudence and La.Code Evid. Art. 507, the trial court did not err when it allowed trial counsel to be subpoenaed and questioned concerning whether Defendant knowingly and intelligently waived his right to a trial by jury. All of the prerequisites of article were satisfied. The information sought was essential to the completion of the current appeal. The State's purpose for issuing the subpoenas was not to harass either the client or the attorney but to resolve a question ordered to be resolved by this court. The subpoenas listed the specific information sought and gave timely notice. Finally, there was no alternative means of obtaining the information. The only indication in the record that a jury trial was waived was the fact that a judge trial occurred without objection and the question was not raised on appeal—it was this court that noticed and raised the error patent.

At the evidentiary hearing, the hearing judge ruled:

Well, look, I read both of your briefs, and this Court finds that under the rules of professional conduct a lawyer may reveal information related to the representation of the client to the extent that the lawyer reasonably believes necessary to respond to allegations in any proceedings concerning the lawyer's representation of a client.

So, this Court finds that the attorney-client privilege does not exist on the issue of whether the defendant knowingly and intelligently waived his right to trial by jury. So, that's the issue here, whether the defendant fully was informed of his rights regarding waiving his rights to trial by jury. So, the subpoenas are necessary.

According to Attorney Lopez, at the time of the trial, he was a District Defender for St. Landry Parish. He had been District Defender for approximately fifteen years and had tried "over a hundred" criminal cases during that time. He stated that of those cases perhaps fifteen or twenty were tried in front of a judge rather than a jury. He testified that it was his practice to look at a case, the evidence, the nature of the charge, and then he would make an independent decision as to whether the client should consider waiving the jury. He stated that in the current case, particularly after a La.Code Evid. art. 404(B) hearing, where it was determined that evidence of other incidents of inappropriate sexual contact with minors would be admitted, he decided that the case was better off being tried in front of a judge.

Attorney Lopez testified that he recalled discussing the matter with Defendant sometime in March 2010. He asserted that at the time, he had numerous contacts with Defendant, and he was of the belief that Defendant was intelligent and comprehended the "general nature of the matters that he was facing." He explained that Defendant had copies of all of the discovery he had in his file, except for DVD's and videotapes of the alleged previous victims, which they viewed together in Attorney Lopez's office. Attorney Lopez stated while it is very rare that he "instructs" a client, he will "strongly suggest [in] some situations."

> A. Mr. Richard, and I'm going to be very honest. I would have felt very uncomfortable trying this case before a jury. I just don't think I would have. I mean, I would have if I was forced to, but I didn't feel comfortable with it under the circumstances. So, I would have probably strongly suggested that he listen to what my thoughts were.

> Q. Did he indicate, well let me ask you. If he'd said no I want a jury trial, what would you've done?

> A. You mean if he said no I want a jury trial?

> Q. Yeah, yeah.

A. I would have had to—I would have had to do what he wanted.

Q. Did he indicate he wanted a jury trial, at any point in time?

A. No.

Attorney Lopez stated that he believed Defendant had made a "knowing and intelligent decision to follow" his advice to elect a judge trial. He stated that he "surely" told him he had a right to a trial by jury.

> A. That he had a right to a trial by jury. Did I elaborate on that in great, great detail, probably not, but I did inform him that it was obviously two ways to go with this matter.

> Q. Do you remember how many conversations you had regarding the jury trial waiver, or was there just one where you—go ahead?

> A. I—there was [sic] surely, surely two. There was surely one in my office, and that's the one I can sort of recall how we were sitting and where we were sitting. I remember that discussion. The second one was before I informed the Judge that we were going to waive the jury, and I believe it was at maybe a docket sounding or the morning of a jury selection, in any case, when I informed Judge Hebert, when Mr. [L.]'s name was called, sort of what are we going to do. I said, we're waiving the jury, Your Honor. And I believed that I would have talked to him prior to that, me saying that to a Judge again.

Although he was not in the room when Attorney Lopez advised the judge of the decision, Defendant was in the courthouse at the time he advised the trial court of the decision. Attorney Lopez stated he remembered this because a date was set for the trial and he had to make certain Defendant knew of the date. He further explained that following these sessions with the judge and other attorneys, which included the district attorneys, regarding trial priority list, the usual practice was to then go into to the courtroom and put in to the minutes certain decisions made while in the judge's "backroom." However, after waving the jury trial and leaving the session, he told Defendant he was free to leave for the day because they had the trial date.

11

Judge Donald W. Hebert testified that he had no conversation with Defendant regarding waiving a jury trial. He recalled that "as we were going through the Simpson list priority list, [Attorney Lopez] indicated that the matter would be going to trial, and that it would be a bench trial, and that the defendant was waiving the jury." He testified that the fact a contemporaneous record was not made of the waiver was "a short coming on my part." He stated that at the time of trial, he had no concerns about it being a judge trial because "of the caliber of defense counsel that was involved."

The hearing judge then ruled:

Here's how I see it. From Attorney Ed Lopez's testimony here on the stand today. You know, he said, basically I independently made a determination that the case should be tried by a Judge. He went [sic] to say that the 404(B) evidence convinced me that the case should be tried by a Judge. Yes, I have an independent recollection of discussing waiving the jury with the defendant, probably, initially at my office. He, the defendant, was able to answer my questions and to make comments as to the defense. I had no reason to believe that the defendant was not able to assist me. We discussed the 404(B) evidence with him. The defendant he was talking about. I delivered a copy of the tapes and the discovery to the defendant. We may have reviewed them together, probably at my office. We had numerous personal contact, or I had numerous personal contacts with the defendant. I probably talk [sic] to him more than any other clients. I made it known to the defendant that they have to suffer the consequences, and I would have felt very uncomfortable trying this case before a jury. And I probably strongly suggested to the defendant the jury be waived. He did not indicate, talking about the defendant, that he wanted a jury trial after me advising him. I believed that he understood that he had a right to trial by jury, on at least two occasions. One, at my office and for sure, the second one before I informed the Judge that we were going to waive the jury at docket sounding in the backroom, which is in the Judge's chambers.

Mr. Lopez went on to say, on cross examination, that he always believed that this case would be tried by the Judge. Mr. Lopez said he had an independent recollection of telling Judge Hebert that they were going to waive the jury.

So, this Court, after hearing all of the evidence and arguments of counsel, rules that the defendant in this case, [A. D. L.] made a knowingly [sic] and intelligent waiver of his rights to trial by jury and elected to be tried by a bench trial before Judge Hebert.

Defendant argues there is nothing in the record to indicate that he believed and, "more importantly, desired the case be tried by a judge instead of before a jury." He asserts that the "hearing judge's summary of the facts is not fully supported by the record[.]"

In *State v. Singleton,* 05-622 (La.App. 5 Cir. 1/31/06), 922 So.2d 647 (*Singleton I*), the defendant was tried by the trial court and found guilty of aggravated rape. Prior to trial, defense counsel filed a motion to waive the jury trial and the trial court signed the motion the same day in chambers without a hearing. Although defense counsel had signed the motion, defendant had not. On appeal, the defendant alleged that he had left the decision to waive his right to a jury to his attorney but then asserted that he had not been advised of the options and benefits of a jury trial. Because the record was devoid of any testimonial evidence of the validity of the waiver, the fifth circuit remanded the matter to the trial court for an evidentiary hearing on whether the defendant had knowingly and intelligently waived the right and reserved his right to appeal an adverse decision by the trial court.

When the matter came back to the fifth circuit in *State v. Singleton*, 07-321, pp. 3-6 (La.App. 5 Cir. 10/30/07), 971 So.2d 396, 397-99, *writ denied,* 09-2021 (La. 8/18/10), 42 So.3d 391 (footnote omitted) (*Singleton II*), on whether the trial court erred when it determined that the defendant had knowingly and intelligently waived a jury trial, the fifth circuit, while affirming the trial court's ruling, discussed the trial court's findings:

> On remand at the evidentiary hearing, defendant testified that he did not tell his attorney to submit a document waiving his right to a jury trial and that he did not sign any document to that effect. He testified that his counsel told him a bench trial would be best because he would get less time than he would with a jury trial. Specifically, defendant stated the following:

Well, when he explained it to me over the phone, and the way he told it to me, he said, if you go with a jury trial and the victim goes to boo-hooing and this and that and get the people to believe and the judge will believe her, you can get—you'll get lesser time if you go with a judge trial. He said I'll get 60 to 70 years. That's what he told me.

After the trial court asked about his opinion at that point, defendant responded, "When he told me that, I said, well, I said, well, you the lawyer, you know what you're talking about. He said yes, and he hung up the phone. And that was it."

Defendant claimed he did not speak to his counsel thereafter. He admitted that he did not present objections at the bench trial and stated he did not raise his objection sooner because he did not understand. He explained to the judge that he found out after trial that it was better to have a jury trial because ten out of twelve people render a verdict instead of the one judge.

Nathan Folse, defendant's former trial attorney, testified at the hearing as well. He testified that when defendant turned down the plea offer made by the State, they discussed in depth his choice between a bench trial or a trial by a jury of twelve. Mr. Folse testified that because of the sensitivity of the case involving defendant's minor niece, they discussed that it may be in defendant's best interest to be judged by the judge alone, rather than a twelve-person jury. He explained that prior to trial and during the case they had discussions of whether the case would be best heard by a judge instead of a jury. They discussed counsel's experience with juries in St. James Parish and their conviction rates, the nature of the case involving the alleged rape of a minor child and the involvement of defendant's family. Mr. Folse testified explicitly that he discussed this with defendant numerous times, with many discussions being in person. Mr. Folse testified that defendant was aware that he would file a Motion to Waive a Jury Trial and was in agreement. Mr. Folse stated that defendant never expressed reservations about having a bench trial and that he first became aware of defendant's objection to the bench trial when he received a call about being a witness in this matter. Mr. Folse could not recall why defendant's signature was not obtained on the motion.

Also at the hearing, the trial court asked Mr. Folse if prior to trial Mr. Folse had talked to the court about defendant wanting to waive his jury trial. Mr. Folse responded that there was a discussion at the bench that defendant wanted to waive his right to a trial by jury and the court tried to advise that he might want a jury trial. According to Mr. Folse, defendant was advised of what the trial court thought might be in his best interest, but defendant decided he wanted to waive his right to a jury trial and have a bench trial.

On remand, at the evidentiary hearing, the trial court stated the following:

> Okay. Based on the testimony and based on the court's knowledge of this particular--the intricacies of this particular case, there's no doubt in this court's mind that this defendant did, in fact, waive his right to a jury trial. At no time did he express to this court that he wanted to have a jury trial.
>
> As a matter of fact, the court remembers, and it's not on the record, but the court remembers this defendant specifically telling his counsel that he wanted to have a bench trial. And the court told his counsel that he should have a jury trial, or advised him he might want to have a jury trial, but he insisted on having a bench trial.
>
> Therefore, based on this particular hearing, the court finds no merit whatsoever in the defendant's contention that he did not knowingly and intelligently waive his right to a jury trial, and let the record so reflect.
>
> . . . .
>
> In the present case, a Motion to Waive Trial by Jury was filed by defense counsel. Although this Court, in defendant's first appeal, found the attorney-filed motion was insufficient to show a knowing and intelligent waiver, we find that the testimonies elicited at the evidentiary hearing show a valid waiver.

In the current case, only the trial counsel's testimony evidenced the validity of the waiver. The trial judge never spoke with Defendant and could only verify that he was told Defendant had waived jury trial. Unlike the situation in the *Singleton* case, where a motion to waive jury trial was filed several months prior to trial, in the current case, there was no indication of a waiver other than the fact the judge trial took place without objection.

In *James I,* 656 So.2d 746, the matter was raised on appeal when the defendant asserted that the trial court erred by not placing nor having included in the record proof that he waived a jury trial. In *James II*, 751 So.2d 419, a transcript of the arraignment was submitted which showed that while the trial court

15

advised James that he had a right to a jury trial or a judge trial if he should so choose but there was no election or response in the record. Then, while trial counsel testified as to his general practice regarding whether his clients received a jury trial or a judge trial, he did not testify to the substance of any specific conversation with James. Accordingly, the fifth circuit found the record insufficient, reversed James' conviction, and remanded for a new trial.

In the current case, as previously noted, there was no testimonial evidence or minute entry indicating Defendant was advised of his right to a jury trial. He was arraigned on August 21, 2008. According to the minute entry, he waived formal arraignment. "Defendant's Written Plea of Not Guilty in Lieu of Formal Arraignment with Notice of Trial Date and Other Appearance Dates" was filed on August 21, 2008, wherein Defendant was notified of his felony jury selection date. Otherwise, there was no indication he was advised of his right to elect a jury trial or a judge trial. However, unlike in *James II*, defense counsel testified to the substance of at least one specific conversation with Defendant regarding whether he should elect a judge trial over a jury trial and stated there was a second conversation at the courthouse just prior to advising the trial court that Defendant waived a jury trial.

Defendant argues this court should find that the record now before this court is insufficient to establish whether Defendant validly waived the right to a jury trial. In *Singleton I*, 971 So.2d 396, there was some indicia of evidence in the record prior to trial that the defendant may have waived his right to a jury trial—the motion to waive jury trial. The written motion together with trial counsel's testimony at the evidentiary hearing and the defendant's admission he had a conversation with his attorney about the election were found to be sufficient evidence of a knowing and intelligent waiver. The same was found in *State v.*

16

*Fuslier*, 07-572 (La.App. 3 Cir. 10/31/07), 970 So.2d 83, wherein the only evidence of a waiver was an unsigned motion to waive filed prior to trial by defense counsel. At the evidentiary hearing, defense counsel testified regarding extensive conversations he had with Fuslier regarding the benefits of waiving a jury trial. Furthermore, Fuslier also testified he understood the strategy of a judge trial in his case.

However, we find that the testimony given at the evidentiary hearing was sufficient to support the hearing judge's ruling. Defendant refused to testify at the evidentiary hearing. Initially, the State asked Defendant his position on the issue of whether he knowingly and voluntarily waived the right to a jury trial. However, as noted above, Attorney Balfour advised the hearing judge that Defendant wished to remain silent and asserted the attorney-client privilege. The State argued it was not a matter of the Fifth Amendment right against self-incrimination. The State argued:

> There's nothing in any jurisprudence that says that you have the right to remain silent whether or not you intended something. You come in. You take a plea. He came in. He sat through a trial. He has taken a position, and I think that, that's why we have to determine whether or not he intends to—let's say we do this. Let's say we go through this hearing, and you determine that he is going to be given a second bite at the apple. And—I don't think he's entitled to it, but then he waives the jury again. What's the point of that? I mean, I think the Court has a right to hear him, but to hear from him at this point say do you intend to continue with your waiver. Because you made knowingly and intelligently on the front end, or do you contend that you were not, because that's the issue. You were not knowingly and intelligently properly informed so that you could knowingly and intelligent waiver, and that's all he's got to take a position.

At the evidentiary hearing, there was nothing before the hearing judge to refute Defendant's trial counsel's testimony that Defendant knowingly and intelligently waived a jury trial. The hearing judge had Attorney Lopez's testimony to consider, and, as pointed out by the State, Defendant made no

objection during trial, nor raised the issue on appeal. The trier of fact can accept or reject, in whole or in part, the testimony of any witness. Furthermore, it is not the function of the appellate court to second-guess the credibility of a witness as determined by the trier of fact or to reweigh evidence absent impingement on the fundamental due process of law. *State v. Frith*, 08-52 (La.App. 5 Cir. 4/29/08), 985 So.2d 782. Finally, whereas the issue of whether Defendant waived the right to a jury trial was an issue of fact and not of law, we cannot say that the hearing judge abused his considerable discretion.

## DECREE:

We affirm the hearing judge's ruling that found Defendant validly waived his right to a jury trial.

**AFFIRMED.**